UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TINA COTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01175-TWP-DML |
| | ) | |
| CLINTON COUNTY, IN, and SKIP EVANS | ) | |
| in his personal and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment ([Filing No. 32](#)) filed by Defendants Clinton County, Indiana ("the County"), and Skip Evans, in both his individual and official capacities ("Mr. Evans") (collectively, "Defendants"), as well as a Cross-Motion for Partial Summary Judgment ([Filing No. 39](#)) filed by Plaintiff Tina Cottrell ("Ms. Cottrell"). Ms. Cottrell brought claims against the Defendants under 42 U.S.C. § 1983, alleging that Defendants violated her rights under the First Amendment of the United States Constitution by disciplining her for openly criticizing the Clinton County Commissioners at public meeting.[1] For the reasons set forth below, Defendants' Motion is **GRANTED**, and Ms. Cottrell's Motion is **DENIED**.

## I. BACKGROUND

The material facts in this case are not in dispute, and are viewed in the light most favorable to the party opposing the motion under consideration. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Ms. Cottrell served as the

---

[1] Ms. Cottrell's Complaint also alleges that Defendants required pre-approval of any newspaper articles drafted by her, as well as prohibited her from talking with the local radio station about issues related to Clinton County. ([Filing No. 1, at ECF p. 3](#).) However, her cause of action relates only to the alleged retaliation for her speech at the meeting ([Filing No. 1, at ECF p. 5](#)), and she does not address these alleged restrictions on her communications with the media in her Motion and briefing.

Superintendent of Parkview Home ("Parkview"), which is a County owned assisted- living residential facility for handicapped and elderly individuals in Clinton County, Indiana. The Superintendent of Parkview reports to the County Commissioners, and the Commissioners appoint the Superintendent on an annual basis.

The Superintendent is responsible for directing and coordinating all operations at Parkview. The duties include directing personnel, preparing the annual budget, monitoring expenditures, maintaining financial records, monitoring resident trust funds, and ensuring the safety and well-being of residents and staff. Some of the Superintendent's essential duties, found in an official job description, include directing and coordinating operations of Parkview, answering the telephone and responding to inquiries and complaints, providing information or routing calls as appropriate, receiving complaints and mediating problems for residents and employees as needed, serving as liaison between Parkview and residents, family members of residents, civic groups, church groups and the general public in order to ensure good public relations to the community, and consulting with County officials and the general public as needed to exchange information, provide expertise, coordinate activities, discuss problems, or receive advice and direction. ([Filing No. 34-2](Filing No. 34-2).)

Ms. Cottrell served as the Assistant Administrator for 14 years, prior to her appointment by the Clinton County Commissioners to serve as the Superintendent of Parkview in 2001. She was reappointed as the Superintendent each year thereafter until January 3, 2014. As Superintendent, Ms. Cottrell was a non-exempt salaried employee and was not required to clock in or clock out at the start or end of each workday. She typically maintained a regular work schedule of Monday through Friday, 7:00 a.m. to 2:00 p.m., and remained on-call as needed 24 hours a day.

In 2011, the County Commissioners became aware of surplus County property located at Parkview and they decided to dispose of the property using a private bidding auction process. Ms. Cottrell's only duties with respect to the auction were to place items on display and provide bid forms to inquiring bidders.

During her service as both Assistant Administrator and Superintendent of Parkview, Ms. Cottrell attended many County Commissioners' meetings. One such meeting that she attended was on May 20, 2013. On that date, Ms. Cottrell arrived at work at 7:00 a.m., and at approximately 8:00 a.m. she left Parkview and traveled to the Clinton County Courthouse to deliver some paperwork related to Parkview to the County Auditor. After turning in the paperwork, Ms. Cottrell stopped at the County Commissioners' meeting, which was already underway. Ms. Cottrell was not included on the meeting agenda, but walked into the Commissioners' meeting because she saw a County Councilman with whom she wanted to speak about donations for Parkview. She sat down in the gallery and motioned to the Councilman from across the room, indicating that he should call her. Ms. Cottrell then remained in the meeting because the Commissioners began asking her questions about the status of a gentleman who had recently been admitted to Parkview. The gentleman had no income and did not want to apply for any benefits. Following this discussion, the Commissioners began addressing a separate issue regarding certain farm equipment at Parkview that had become old and obsolete. There was discussion on whether insurance on the equipment was necessary and how much the equipment might be worth. Ms. Cottrell explained what each piece of equipment was and advised which items were still used at Parkview and gave her opinion that the items had minimal value. The discussion then turned to whether the equipment should be sold. When Mr. Evans, one of the Commissioners, mentioned the option of holding an auction to dispose of the equipment, Ms. Cottrell responded, "Oh Lord, please whatever you guys

do when it comes to another auction do better than the first time. You wouldn't believe the calls we got." ([Filing No. 34-3, at ECF p. 15](#)). The discussion then addressed what happened at the previous auction of Parkview equipment held in 2011, and Ms. Cottrell commented that members of the community were upset because the auction was rushed, and because all of the items went to one individual.

On May 22, 2013, the Commissioners issued a written warning to Ms. Cottrell for her comment at the Commissioners' meeting. The written warning stated:

> …you made a comment regarding the possible auction of equipment to the effect of 'I hope you do better that [sic] the last time.' . . . This type of comment is goes [sic] against the Code of Conduct adopted by the Board earlier this year where personal attacks made publicly are not permitted.

([Filing No. 34-4](#)). The warning advised that future violations of the Code of Conduct or other inappropriate behavior could result in further disciplinary action, up to and including termination. Specifically, the warning stated that additional disciplinary action would be in the form of a final warning. ([Filing No. 34-4, at ECF p. 2](#).)

According to Ms. Cottrell, she made the comment at issue because she had received numerous telephone calls and had personal face-to-face conversations with members of the public following the 2011 auction, about their dissatisfaction with the process. Ms. Cottrell believed people called her and spoke to her because they knew she was the Superintendent at Parkview. Ms. Cottrell did not formally inform the Commissioners about these complaints at the time they occurred in 2011, and the only time she advised the Commissioners about the calls and complaints was her commentary at the May 20, 2013, meeting. Additional facts will be addressed below as necessary.

## II. LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56 where there exists "no

4

genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

Ms. Cottrell alleges that the discipline imposed upon her violated her rights under the First Amendment because, although she is a public employee, her comments were made as a citizen on a matter of public concern. The Supreme Court has stated that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). However, when public employees speak in their capacity as public employees, they are not speaking as "citizens" for purposes of the First Amendment, and the Constitution does not protect their communications from employer discipline. *Id.* at 421. Whether the First Amendment protects a public employee's speech requires two inquiries. In the first inquiry, the Court must determine whether the employee spoke (1) as a citizen, and (2) on a matter of public concern. *Id.* at 418 (citing *Pickering v. Bd. of Ed. of Twp.*

5

*H.S. Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)). The "threshold inquiry is whether the employee was speaking as a citizen; only then do we inquire into the content of the speech." *Spiegla v. Hull (Spiegla II)*, 481 F.3d 961 965 (7th Cir. 2007). If the answer to either of these questions is no, the employee has no First Amendment cause of action based on her employer's reaction to her speech. *Garcetti*, 547 U.S. at 421. The second part of the inquiry is "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Id.*

Ms. Cottrell's First Amendment claims fail as a matter of law because she has not shown that she was speaking as a citizen when she made the objectionable comment at the County Commissioners' meeting on May 20, 2013. The Supreme Court has held that when public employees make statements "pursuant to their official duties," the employees are not speaking as citizens for purposes of the First Amendment. *Id.* at 421. In making this determination, the Court must determine "whether the speech is part of the employee's 'daily professional activities.'" *Chrzanowski v. Bianchi*, 725 F.3d 734, 739 (7th Cir. 2013) (quoting *Garcetti*, 547 U.S. at 422). While the Supreme Court has not articulated a comprehensive framework for determining the scope of an employee's duties in cases, such as this one, where there is room for debate, the Court stated that "[t]he proper inquiry is a practical one." *Garcetti*, 547 U.S. at 424.

The Seventh Circuit addressed the issue of whether a public employee was speaking as a citizen for purposes of the First Amendment in *Mills v. City of Evansville, Ind.*, 452 F.3d 646 (7th Cir. 2006). *Mills* held that a plaintiff police officer spoke as a public employee when, while on duty and in uniform, she told senior managers that a proposed policy change would not work and

6

gave the impression that she would enlist community organizations to oppose the policy rather than support it. *Id.* at 648. Upon review of the district court's ruling on summary judgment, the Court of Appeals affirmed that Mills' criticism of the policy was not that of a citizen because she spoke "as a public employee contributing to the formation and execution of official policy." *Id*.

Taking a practical view of the evidence as a whole, the Court finds that Ms. Cottrell's comments during the County Commissioner's meeting were pursuant to her position as Parkview Superintendent. Similar to the officer in *Mills* who was on duty and discussing the official business of her employer, Ms. Cottrell attended the meeting during her normal workday and went into the Commissioners' meeting to address an issue related to Parkview. During the meeting, Ms. Cottrell was directly involved in several discussions that were related to Parkview's operations, including the indigent resident who had recently been admitted to Parkview, and the status of the farm equipment located at and used by Parkview. Ms. Cottrell does not dispute that her comments related to the resident were pursuant to her position as Superintendent, but argues that the subsequent discussion regarding the auction of the farm equipment was not pursuant to her employment because she was not required to attend the meeting, nor was she required to convey the citizens' complaints at a public session. This argument is not consistent with Ms. Cottrell's job duties and the context of the conversation as a whole.

Ms. Cottrell's job description—the validity of which she does not dispute—includes responsibilities such as directing and coordinating operations of Parkview, answering telephone calls and responding to inquiries and complaints, assisting with and performing farm management tasks, ensuring good public relations to the community, and consulting with County officials and the general public as needed to "provide expertise, coordinate activities, discuss problems, or receive advice and direction." ([Filing No. 34-2, at ECF pp. 1-2](#)). These are the duties Ms. Cottrell

7

was performing at the Commissioners' meeting by answering questions and providing her expertise regarding the condition and value of the farm equipment located at and used by Parkview. While Ms. Cottrell's job duties do not specifically include organizing and conducting auctions of county property, they do include managing Parkview's operations as a whole and performing farm management tasks, both of which are related to decisions regarding the farm equipment at issue. Ms. Cottrell was consulting with the Commissioners in developing a plan to dispose of property at Parkview, which was necessarily related to Parkview's operations.

In addition, by communicating the concerns of the community regarding the 2011 auction and asking the Commissioners to "do better than the first time," Ms. Cottrell was performing her duty to "ensure good public relations to the community" and to "provide expertise, coordinate activities, discuss problems, [and] receive advice and direction." ([Filing No. 34-2, at ECF p. 2](#)). Ms. Cottrell admitted that citizens called her with complaints about the auction because she is the Superintendent of Parkview, not merely because she was also a concerned citizen. ([Filing No. 34-4, at ECF p. 44](#).) In addition, her comment referenced calls that "we" received, necessarily referring to Parkview, not just herself individually. Ms. Cottrell's comments about the auction can be characterized similarly to the plaintiff's comments in *Mills*, in that they both "contribut[ed] to the formation and execution of official policy," namely the plans for the disposition of property used by Parkview, and ensuring that Parkview maintained good public relations with the community. *Mills*, 452 F.3d at 658.

As such, the Court finds that Ms. Cottrell's comments at the Commissioners' meeting were made pursuant to her official duties as Superintendent of Parkview; thus, her speech is not protected by the First Amendment.

Because the Court finds that Ms. Cottrell was not speaking as a citizen, there is no need to

8

inquire into whether the speech was on a matter of public concern, nor is it necessary to weigh the interests of the County. *Spiegla II*, 481 F.3d at 965. As a matter of law, Defendants are entitled to summary judgment, and their Motion is therefore **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the discipline issued to Ms. Cottrell in response to her speech at the County Commissioners' meeting was not protected by the First Amendment, and therefore **GRANTS** the Defendants' Motion for Summary Judgment ([Filing No. 32](#)), and **DENIES** Ms. Cottrell's Motion for Partial Summary Judgment ([Filing No. 39](#)). Ms. Cottrell shall take nothing by way of her complaint.

**SO ORDERED.**

Date: 9/22/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ryan Patrick Sink
JOHN H. HASKIN & ASSOCIATES
rsink@jhaskinlaw.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES
jhaskin@jhaskinlaw.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Fishers)
lroberts@cchalaw.com

Thomas Frank Little
POWER LITTLE LITTLE
powerlittl@accs.net